# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 7:23cr00034** |
| | : | |
| **ROBERT LEON KING** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Robert Leon King unlawfully possessed numerous firearms, ammunition, and explosives after having been previously convicted of a felony. Having considered the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States recommends that Robert Leon King be sentenced to a term of incarceration of 41 months, the low end of the applicable guideline range. In support of its recommendation, the government states as follows:

## PROCEDURAL HISTORY

On March 14, 2024, King appeared before the court and entered a plea of guilty to Counts 1 and 2 of the Indictment. Count 1 charges King with possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g). Count 2 charges King with possessing a weapon made from a shotgun without first registering it in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. King entered this plea pursuant to a written plea agreement. ECF No. 62. This agreement was reached by the parties after the court denied King's motion to dismiss the Indictment, which was premised on the Supreme Court's ruling in *New York State Rifle & Pistol Association, Inc., et al. v. Bruen*, 142 S. Ct. 2111, 2129 (2022). ECF No. 60 & 61. The plea

agreement provides for a carve-out to the standard appellate waiver that allows King to appeal the court's ruling on his motion to dismiss. ECF No. 62, at 8. At the March guilty plea hearing, the court accepted King's plea of guilty and convicted him of Counts 1 and 2. ECF No. 65. Sentencing is scheduled for June 26, 2024.

## LEGAL STANDARD

In sentencing a defendant, district courts must follow a four-step process: (1) properly calculate the advisory sentencing guideline range; (2) determine whether a sentence within that range and within statutory limits serves the factors set forth in 18 U.S.C. § 3553(a) and, if it does not, select a sentence that does serve those factors; (3) implement mandatory statutory limitations; and (4) articulate on the record the reasons for selecting a particular sentence and, if applicable, explain why a sentence outside of the advisory sentencing guideline range better serves the relevant sentencing purposes set forth in § 3553(a). *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 260-65 (2005); 18 U.S.C. § 3553(a).

## APPLICABLE GUIDELINE RANGE

The presentence report (PSR) properly calculates the guidelines in this case. PSR, ECF No. 75, at ¶¶ 24-34. The base offense level is 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B)(i)(II)(ii)(I). *Id.* ¶ 24. There is a +2 enhancement because the offense involved between 3 and 7 firearms, § 2K2.1(b)(1)(A). There is an additional +2 enhancement because the offense involved a destructive device, § 2K2.1(b)(3)(B). The total offense level is 21, taking into account acceptance of responsibility. PSR ¶¶ 24-34. King has a total criminal history score of 3, placing him in a criminal history category of II. *Id.* ¶¶ 37-42. The resulting

2

guideline range is 41 to 51 months. *Id.* ¶ 67. The government does not object to the PSR's calculation of the applicable guideline range.

## DEFENDANT'S OBJECTIONS TO THE PSR

King objects to the last sentence in paragraph 16 of the PSR, which reads: "The witness also stated Mr. King traded methamphetamine for at least one of the firearms found during the execution of the search warrant." Def.'s Obj., ECF No. 73, at 2. King insists there is no corroboration of this fact, that it is hearsay with no indicia of reliability. King claims the witness's statement is "a baseless accusation and not proper to be included in the PSR." *Id.* The government disagrees. This statement was made under oath, and a transcript of the testimony was provided to the probation officer with the discovery. More still, this witness's statement is corroborated by King's own admission to investigators, documented in paragraph 18, that he "trade[s] weed and stuff like that for guns." PSR, at ¶ 18. As such, this sentence is appropriately included in the PSR.

King also objects to paragraph 17, which documents how King came to law enforcement's attention—specifically, that a controlled buy of methamphetamine was conducted at King's residence. This background information is appropriately included in the PSR; these facts gave rise to the search warrant that was executed at that residence, which ultimately led to the recovery of the firearms and blasting caps charged in this case. The PSR has been amended to reflect that King did not own this property and was living there with a number of other individuals, as requested by defense, and the government has no objection to the amendment.

King objects to paragraph 18 as irrelevant. Paragraph 18 accurately documents

3

statements the defendant made to investigators while he was being transported to Roanoke in connection with arrest on these federal charges. The PSR was amended at the defendant's request to include additional statements made by King to investigators, and the government has no objection to that amendment.

King objects to paragraph 26, adding +2 to the guideline calculation for possession of a destructive device pursuant to § 2K2.1(b)(3)(B). Importantly, King does not allege that electric blasting caps are not destructive devices for purposes of § 2K2.1(b)(3)(B), nor can he—blasting caps plainly fall within this definition and the guideline enhancement is appropriately applied here. Rather, King argues that since he "did not know what these devices were" he should not be subject to the enhancement. Whether or not King knew how these blasting caps work or whether they are considered a destructive device is irrelevant. He admitted to possessing the blasting caps, which he stored in the same covered footstool as his firearms.



4

The government also notes these devices were clearly marked "blasting" and "explosive" and "dangerous."



As such, the guidelines are appropriately calculated.

Finally, the government has no objection to the amendment to PSR paragraph 60 to include additional school records obtained by defense.

## STATUTORY LIMITATIONS

The statutory maximum sentence for Count 1 is a term of imprisonment of 15 years and for Count 2 is a term of imprisonment of 10 years. PSR ¶ 66. For both counts, there is a maximum $250,000 fine and a period of supervised release of not more than 3 years. PSR ¶¶ 76. There is a mandatory special assessment of $100 for each felony count, pursuant to 18 U.S.C. § 3013. PSR ¶ 77.

5

## ARGUMENT

Robert King, a convicted felon, likes guns. He had in his possession four firearms, four electric blasting caps, and ammunition at a place he resided with six other people from which narcotics were being sold. One of those firearms—essentially, a sawed-off shotgun—is deemed by Congress to be a particularly dangerous weapon and, as such, is regulated under the National Firearms Act. In addition to this NFA firearm, King had another shotgun, a revolver, and a pistol. That pistol was found outside a window on the exterior of the residence—King tossed it when he saw law enforcement approach on the morning of the search warrant. He had possessed that pistol while gambling the night before and into that morning. Det. Hr'g Tr., ECF No. 24, at 18. A witness told investigators King usually had a firearm in his possession. PSR ¶ 16. He carries it for protection. Det. Hr'g Tr., ECF No. 24, at 28.

According to this same witness, King obtained one of these firearms by trading drugs for it. King asks the court to ignore this witness's statement as uncorroborated hearsay, Def.'s Obj., ECF No. 73, at 3, but King himself corroborated this statement, telling investigators he trades narcotics for guns. He said, "[p]eople, they just bring [guns] to me. I've always liked them for some reason, and that's that." PSR ¶ 18. He didn't ask questions about where the guns came from; he "just took them." *Id.*

Along with these firearms, King possessed electric blasting caps. King claims not to know what they were, but this claim is dubious to say the least. The nature of these devices is obvious on their face and, to the extent there is any doubt, there is a warning label that reads: "KEEP FROM CHILDREN. DANGEROUS. EXPLOSIVE BLASTING CAP."

6

King kept them secreted in his footstool along with the firearms, strongly suggesting he knew these were explosive devices. These blasting caps are dangerous enough that law enforcement saw fit to call in a Virginia State Police explosives specialist to handle these destructive devices during the execution of the search warrant. The safest way to handle them was to detonate them, which they did on site. Not only were these devices functioning properly, they produced "an extremely big boom" upon detonation. Det. Hr'g Tr., ECF No. 24, at 24. The possession of these destructive devices, along with multiple firearms, including an NFA weapon, by a convicted felon is a serious offense. There is a need in this case for the sentence imposed to reflect the seriousness of this offense conduct as well as provide just punishment and adequate deterrence, both specific and general. The guidelines, which take into account King's possession of the NFA firearm, the additional guns, and the explosives, adequately account for the offense conduct.

     The guidelines likewise account for the history and characteristics of this defendant. King's prior criminal history dates back to 1995, when he engaged in a spree of robbery, larceny and breaking and entering in the nighttime. To be sure, these convictions are nearly 30 years old at this point. But they carried active probation supervision and, for two of these convictions, he received probation violations in 2007, one of which resulted in jail time. King also had two probation violations in 2014 and 2016 stemming from a 2009 driving conviction, for which he also received jail time. While he falls into a criminal history category of II, it cannot be said that King has led a law-abiding life.

     King's inability to abide by the orders of the court and the rule of the law is apparent not only in his recent unlawful possession of firearms and explosives, and his

7

numerous past probation violations, but also his attempts post-arrest to obstruct justice. Jail calls between King and his family and friends revealed a scheme to have someone without a felony record claim the guns for him. *See* Det. Hr'g Tr., ECF No. 24, at 26. The sentence imposed in this case should also promote respect for the law.

Taking into consideration all of these facts and circumstances, the guidelines in this case get it right, appropriately accounting for the offense conduct and the history and characteristics of this defendant. A guideline sentence of 41 months would serve the sentencing goals set forth by Congress in § 3553(a).

## RESTITUTION

Restitution is not at issue in this case.

## SENTENCING WITNESSES

The government does not intend to call any witnesses at sentencing.

## SUPERVISED RELEASE

For the reasons articulated above, the government respectfully recommends the court impose a period of supervised release of three years in this case.

## CONCLUSION

For these reasons, the United States recommends that the court impose a sentence of 41 months, followed by a period of supervised release of three years, which is sufficient but not greater than necessary to satisfy the factors under 18 U.S.C. § 3553(a).

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

s/Kristin B. Johnson
Assistant United States Attorney
VA Bar No. 71115
310 1st Street SW, Suite 906
Roanoke, VA 24011
(540) 857-2250
Kristin.Johnson2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2024, I caused to be filed electronically this Sentencing Memorandum with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

 s/Kristin B. Johnson
Assistant United States Attorney
VA Bar No. 71115

9